Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to give their attention for the court is now sitting. God save the United States and this honorable court. Our first case this afternoon is case number 19-1957 Poly-Med, Inc. v. Novus Scientific. Mr. Brown. Yes, sir, your honor. You may proceed, sir. Thank you, your honor. Thank you and may it please the court and with many thanks for all of you for the efforts to keep these arguments going. This case is before the court on an issue of law. The district court stated it, I think, as succinctly as it can be stated when she wrote, when it wrote, if the court finds that the continuing breach theory is recognized under South Carolina law, Poly-Med's claims alleging breach of the agreement would not be barred by the statute of limitations merely because one or more of the alleged breaches occurred outside of the three-year limitation period. That's from the order of the district court granting summary judgment. In this case, we face the issue of whether South Carolina would, in fact, adopt a continuing breach theory with regard to breach contract claims. I would respectfully submit that the cases that have come from the court in South Carolina show that our court would, in fact, recognize such an application of a theory here. One thing I would like to say quickly before I get into the facts and the arguments in this case is essential to everything that we touch upon nor for that matter am I trying to toll a statute of limitations. If it's okay with the court, I would simply like to refer to things as stale breaches which are breaches that are outside of a three-year statute of limitation or if we're talking about a statute of repose case outside of the applicable statute of repose and fresh breaches, those that fall within the statute of limitations or within the statute of repose if we're discussing a statute of repose case. As the court is, I'm sure, aware, this case involves a contract between my client, PolyMed, which is a family-owned company that develops various polymer products in the upstate of South Carolina and is up against Novus, a series of companies that we entered into an agreement with the predecessor that then got assigned to. The contractor, what we just simply refer to as the agreement here, is found in the record and pages 74 through 103 and if you are able to look through it, it's an extensive contract with numerous obligations relating to everything from the development of potential products, right of selection of potential products, patent rights, patent ownerships, patent assignments, use and disclosure agreements, manufacturing, and limitations on specific use of the product for hernia repairs related to herniated tissues and through Novus products only. So it is an executory contract. It's not an executed contract where there's a simple one provision, you agree to it, you breach it, etc. But instead, it's an ongoing contract that has continuing and ongoing multiple rights, obligations, and restrictions between the party, which is to be expected in the environment we live in today. The agreement also, I would point out, has two waiver agreements. One saying a waiver should not deprive either party of a right to terminate, then a standard waiver agreement, which is found pages 98 and 99 of the record. In this case, a lawsuit was brought for breach of contract that related to use and sale beyond the hernia repair, including breast reconstruction, manufacturing of the mesh for non-hernia repair, violation of the patent provisions contained in the agreement, taking other actions prohibited by the agreement with regard to polymed know-how, and during the pendency of this action, we gave notice of default and made an attempt through a declaratory judgment to terminate the contract. The trial court granted summary judgment against all causes of action saying that the contract were violated by the discovery rule came in to violate the statute or to bring about the statute of limitations as a defense. I do apologize for having to take a sip of water. Paul, can I just ask you since you, I'm sorry, this is Judge Harris, since you mentioned the discovery rule, are you asking us to revisit the district court's application of the discovery rule or only the issue you started with this legal question? I'm sorry, your honor, this very legal question. I do not believe this court needs to touch the discovery rule. I do not believe it is implicated in anything we have here, and I think you'll, as we get to further cases that our Supreme Court's decided, you'll see that they work together. They're not inconsistent with one another, so no ma'am, I'm not asking for any rehashing of the discovery rule. Okay. I'm simply asking that this court find that South Carolina law would recognize that contract claims that are based on violations that give rise to independent causes of action that occur within three years before suit is filed are in fact actionable, especially in an executory contract and especially in one that has a no waiver provision or a non-waiver provision. Sorry, counsel, this is Judge Harris again. I'm just trying to really pin down what exactly is in front of us. If we were to agree with you that the South Carolina Supreme Court would likely recognize this continuing violation theory about fresh breaches, there's been no finding yet, right, that there were any fresh breaches. What we would do then is remand for the district court to figure out whether in fact you can show that there was a fresh breach within the three-year limitations period. I think you could remand, Your Honor, although I would point out that the court said if the court finds that a continuing breach is recognized, PolyMed's claims alleging breach of the agreement would not be barred, so. No, I thought you said, I'm sorry, I thought the district court said would not be barred on account of the fact that there were some old ones that fell outside the limitations period. They did. They found that, so we're going to. Right, that's a different question. That's right, and you can send it back, and the trial court can make that determination, quite frankly, on a motion for summary judgment based on the record before it, because not before this court, but the record before that court does show evidence of fresh breaches, and that part has not been. I may be a little bit confused. This is Judge King, Mr. Brown. I thought you wanted us to certify the legal issue to the Supreme Court of South Carolina. Well, Your Honor, understanding I did ask for you to certify, and I'd like for you to certify if you have to certify, and I don't want to be particularly greedy. You know, growing up in South Carolina, they teach us pigs get fat and hogs get slaughtered. However, since this case was decided, a new case came out from our Supreme Court that the District Court did not have the ability to review and determine its applicability to this issue, so I will make the sort of selfish argument that I believe there are enough cases now from South Carolina that this court, this Court of Appeals, can make a determination of the law that South Carolina would apply, or this Court of Appeals can certify it to the Supreme Court if you want further assurances that what I'm saying is, in fact, what we believe to be the correct path. Mr. Brown, excuse me. This is Judge Keenan. Mr. Brown, if we disagree with you that South Carolina law is clear on this subject without having considered the case that you're now bringing to our attention, what about this new case resolved the issue in your mind, and if you could give us the citation to the new case as well? Yes, ma'am. Yes, Your Honor. The new case is called Marshall, and it's actually cited in all our briefs. I cite it extensively in my briefs, and it's called Marshall v. Dodds, and the citation for it is... Oh, that's okay. If it's cited in your brief, I thought that was just something that just came out that you hadn't proposed to before. It came out after the district court ruled on this issue. Judge Charles didn't have the benefit of it. That's what you're saying? That is correct. Yes, sir, Your Honor. The district court did not have the benefit of it, and I cited Marshall v. Dodds. What do you want us to do? What's your number one thing you want us to do? You want us to decide that South Carolina law is something other than what Judge Charles said it was, or do you want us to certify it and get an answer from the Supreme Court of South Carolina if we can? I believe you have the information in front of you to decide that decision, Judge, but if there's any doubt, I'd ask you to certify because I think the law in South Carolina has developed in that clear of a fashion such that the ruling is going to be what I believe it's going to be. Okay, but Mr. Brown, this is Judge Kannon again. Now that you've given us the cite for Marshall, Marshall's a medical malpractice case, isn't it? And you're talking about a tort there and the statute of repose. You aren't talking about a contract. I mean, I can see how you could make the argument it might foreshadow a recognition of continuous breach in contract cases, but it's just really extending the logic of Wilson, isn't it, in the Unfair Trade Practices Act case? I think it is another step forward from Wilson. I think that that may be the reason that we end up asking, if there wasn't the certainty there, to go forward and certify it because South Carolina does not have a breach contract case directly on point. All of the breach contract cases in South Carolina that I have been able to locate are what I call single breach cases on executed contract. They're relatively simple contracts. I will tell you a couple of things with regard to this. Number one, in the South Carolina trial courts, which I do about half appellate, half trial, this issue comes up on a regular basis. It just has not made it to the Supreme Court. We see it in home building cases all the time. You have a breach contract. There is some breach in that under the logic of the district court's opinion and under the arguments being made by Novus, your failure to bring suit because the house wasn't painted buttercup yellow and that was specifically in your contract prohibits you from suing for breach contract four years down the road when you have a roof that was not built to the specifications and starts leaking. That is, and it happens constantly in South Carolina at the trial court level where that issue is faced. It may very well be that it's best to certify it because we never seem to be able to get the right case up to the Supreme Court on that issue. They settle and people don't take them on. I will say this with regard to Marshall and your recognition that it's a medical malpractice statute or proposed case. I think it's interesting though that in Marshall, among the cases they rely upon is the ortho McNeill unfair trade practice act case. If you go back to the district court's opinion, your honor, the district court distinguished ortho McNeill on the sole grounds of, well, this is an unfair trade practice act case. We don't need to, it has no applicability because we're not dealing with an unfair trade practice act case. And the district court also talks about in the opinion or in its order that she could find no precise case on point in South Carolina. It's very hard to find a precise case as y'all are well aware. So we have to look at the general direction often that a state is heading in. And if we go to ortho McNeill, it clearly said that with regard to fresh breaches, you may go ahead and bring suit for them under the unfair trade practice act. Our Supreme court said with regard to Marshall, with regard to the statute of repose and medical malpractice actions, you may go forward and bring suit as to fresh causes of action, even though there's some stale ones out there. We know there are some that exceed the applicable statute of repose in that case, but you may go forward. And interestingly in Marshall, your honor is the fact that the court looked to a Maryland case Jones versus and use that as the basis to come up with their one of their conclusions, as well as they used ortho in the Marshall case. I bring that up because I'm sorry. Does that mean my time is up? That means your time's up. I've got seven minutes. Yes, sir. Your honor. And I appreciate it. I would just point out that, uh, this issue of, of whether or not they should have used this Maryland case, which was a statute of limitations case to support a statute of repose, uh, justice Hearn writing for the majority on our Supreme court said that's a red herring on those issues. So in this particular case, I believe that we and I have saved seven minutes for reply. So I appreciate the court's indulgence. Thank you, sir. Uh, Ms. Mallory. Yes, sir. Hello. How are you? Good to have you with us. Oh, thank you, your honor. Um, and may it please the court. My name is Jennifer Mallory and I'm appearing today on behalf of the, uh, novice appellees and, and I appreciate the opportunity to appear before you today, your honors, the South Carolina statute of limitations analysis rests on twin pillars. And the first is the statute, which shows the legislative intent. And the second pillar is the discovery rule. In this case, we have a plain procedural three year statute of limitations, which applies the breach of contract actions. The statute does not, uh, make allowances for complicated contracts versus simple contracts or multi-party contracts versus two party contracts. It is a just provides for a three year statute of limitations and that is the legislative intent. And then the discovery rule, your honors is the second part of it's the second pillar of our statute of limitations analysis. And in South Carolina, it is settled that the discovery rule does not require actual notice or knowledge of the full extent of a claim. Rather, it only requires a party to act promptly to investigate the existence of a claim where the facts and circumstance indicate that one might exist, not that it does exist, but that it might exist. And so your honors, when we look at the case before the court today, Marshall versus Dodds or the Ortho McNeil Janssen case, all of those cases, uh, are viewed through this, this analysis, these twin pillars of the statute and the discovery rule. And your honors, we would say that Marshall is an interesting case because the facts, as your honor pointed out, are distinguishable, distinguishable from this appeal because it is a med mal case. And some of the law, of course, related to those facts are distinguishable from the breach of contract cases before the court. Nonetheless, your honors, the opinion in Marshall versus Dodds supports the district court's analysis and the proceedings below. And if it pleases the court, we would like to address those aspects of the Marshall opinion for your consideration. This is judge Harris. Can I just ask you a question about Marshall? Um, it did seem that, uh, for the district court and before Marshall, there was an argument that was persuasive to the district court that you could make that, um, I'm sorry. I think of it as the Wilson case, but the ortho ortho med case just simply would not apply outside its statutory context that it was based on that particular statute, the purpose of the statute, the text of the statute, and it would have no greater application. But then in Marshall, which comes out after the district court rules, you know, the South Carolina Supreme Court holds to the contrary and does extend it beyond its original statutory context. So why isn't that enough to, and I will just tell you, that gives me some real pause. The district court didn't have access to that decision. Um, at a minimum, we know that we're dealing with, um, in the, um, ortho case, not with a sort of one-off statutory decision. I mean, at a minimum, don't we need to certify this to the South Carolina Supreme Court? Um, your honor, we would say no. And the reason we would say no is that the, the only similarity and our view between Marshall and ortho McNeil-Janssen, or honestly, if you'd rather call it Wilson, that would make me happy. But, um, but those two cases, uh, the similarity is the focus of the Supreme Court on the applicable statute in both of those cases. So in the Wilson, uh, opinion, the court was looking at the Unfair Trade Practices Act and its decision pertained to the per-violation penalty, which was included in that, that statute. And what the court said there is that the language, and I'm quoting, the language of SCUTPA itself contemplates that an unlawful method, act, or practice may result in multiple statutory violations. And it is the violations themselves that caused the statute of limitations to begin to run. So the court there was focused on the per-violation language. And your honor, while it has been asserted by PolyMed in, in this appeal that the district court placed some artificial restriction on the, the Wilson opinion, we, we would take issue with that because the South Carolina Supreme Court is actually the court that placed a restriction on its decision. It said that SCUTPA statute of limitations began to run anew with each violation. So not some statute of limitations, but the SCUTPA statute of limitations. Now in Marshall, your honor, again, going back to this concept of the twin pillars, um, Marshall was also focused on the statute that applied in that case. And the statute as, as was pointed out was a medical malpractice statute. That is a different statute than the one that controls in the breach of contract context. And judge Harris, again, I mean, I, I absolutely understand your argument that these two cases, Wilson and Marshall are distinguishable. I mean, if they weren't distinguishable, this would be a super short argument, but what I feel like I'm looking at is a Supreme Court that is increasingly willing to, to apply this particular form of the continuing violation theory across different contexts. And in the last two decisions they've had, they've applied it in two different contexts. And so it is hard for me sitting here to see how it's supposed to be clear to me that they would not apply it in this third context, totally agreeing with you that it's a different context. There just seems to be sort of a momentum in this direction coming out of the court. And if your honor didn't know that when it was ruling. Your honor, we would submit that there is not momentum. There are two different statutes that apply in, again, in Marshall and then in Northwood McNeil Jansen that underscore the importance of legislative intent to the court. And your honor in Marshall, we would point the court's attention to the fact that Marshall expressly rejected the continuing tort type doctrine. So there's not, to the extent that there is concern that there's momentum, the Marshall court itself completely eliminates that concern. Sorry, go ahead Judge Keenan. I'm sorry, go ahead Ms. Harris. No, no, you go. Well, okay. Ms. Mallory, but that's a tort. Both of those cases were talking about torts and why, again, with regard to the issue of certification, we don't have any indication what the court would do in a contract case, do we? Well, your honor, we would submit that you do. And the reason, again, looking at Marshall, what the court said there is that it was not willing to embrace a continuing tort type doctrine. And it was, again, rejecting judicially engrafted tolling principles. Right, but the contracts are very different from torts, as you know. And the tort obligation in the case of the statutes in Marshall and Wilson are imposed by statute. That is the violation of statute. The contract relates to the agreement between the parties. Why isn't that a material difference in your analysis? Well, you're absolutely correct, your honor, that the statutes are different. And that's one of the important things here, is that we only have a, the legislative intent that we have before us with regard to the breach of contract claim is just a three-year violation. It doesn't include the additional language that the Supreme Court took advantage of in the Wilson case. It doesn't have the additional language that the Supreme Court and Marshall had to deal with in the statute of repose context. So what the court was doing in both of those cases, and in both it said this, it was not willing to move away from what the legislature had dictated. So if the court has expressly embraced the concept that it must hew closely to the parameters that are imposed by the express language in the statute. We have no such parameters in the breach of contract context that would allow a court to add a new exception on top of the discovery rule exception, which has been applied in South Carolina. And so your honor, the reason why I'm pointing to Marshall as supportive is that the court, again, rejects this continuing tort type theory and polymath. Counsel, this is Judge Harris. As I read Marshall, and you can tell me if I'm wrong, but and that would be helpful because as I read Marshall, I thought they were actually, I agree very clearly rejecting one form of the continuing violation doctrine, the one that treats it as a matter of tolling of the limitations period until one single giant tort is completed basically as in the medical context. But I thought the one thing your colleague was very clear about when he got up and in his briefs was that that's not what they're This is the repeated violation doctrine where the old violations do drop out. There's no tolling of the original limitations period. It's just that the new fresh ones start a new statute of limitations running. So what I understood the South Carolina Supreme Court to be doing was to be distinguishing between those two forms of continuing violation doctrine. But do you read it differently? Yes, Your Honor. So the concept that the South Carolina Supreme Court rejects when it is talking about its rejection of judicially engrafted tolling principles is a continuing tort type theory. And when polymath made its arguments in support of this continuous violation, continuous breach type theory, it relied on Maryland law in large part. And under Maryland law, Maryland courts described this kind of continuing harm or continuing violation doctrine as applying to claims that are in the nature of a continuous tort. Well, that is the very principle that the South Carolina courts have rejected. They have left, but they adopted. It seems to me that what they adopted was, I don't know, I can't, I don't want to go down the rabbit hole of Maryland law, but what they adopted is exactly the theory that your colleague is arguing for here. Not the one continuing violation with the statute of limitations told until it's complete, but the repeated violation doctrine, the one they adopted in Wilson and in Marshall, where even though earlier violations are going to be held outside the statute of limitations, when there is a repeated fresh violation, the limitations period starts to get, and they didn't reject that in Marshall. They adopted that in Marshall. Your honor, they adopted the language they adopted. They use the language of the statute, which says, and this is the part of the statute of repose. It wasn't the statute of limitations. It was the statute of repose, which of course confers a substantive right to a party, not just a procedural statute of limitation, but that portion, the substantive statute of repose says that a med mal action must be commenced within a period, quote, not to exceed six years from date of occurrence, end quote. So the Marshall court focused on those specific words that the general assembly chose, and they stated, and again, I'm quoting from the opinion, the statute clearly sets forth the triggering date as the date of occurrence. However, we note what this provision does not say, the date of first occurrence, end quote. So the court, again, was dedicated to following what the general assembly had instructed, and it was not willing to ignore legislative intent and change the language of the statute of repose. Are you making a plain language argument? Is your argument that the plain language of the statute of limitations would be, would sort of prohibit this repeated violation theory? Is that your argument? Your honor, I would, I watch the language that would be inconsistent with the violation theory. I apologize. I, I submit that what the South Carolina Supreme court says is that in these only two instances and the Wilson case, and in the Marshall versus Dodd's case, that the court was driven by the specific language of the statutes that were before it. And this Mallory of the salary, this is such a Keenan. Um, what about the language from Marshall where the court says we fail to see the logic in preventing an agreed party from seeking redress for acts that occurred within the repose period. It can hardly be said that active negligence that occurred within the repose period constitute long forgotten acts or omission. I mean, if anything, doesn't, doesn't that undercut the argument that you're making right here and seem to suggest that the court is open to the within the period, even though there has been long forgotten acts or omissions outside the limitations period. No, your honor. And the reason is the exact language that you focused on where the court refers to the repose period, the statute of repose section of the med mouth statute of in the breach of contract statute. So what we have here is a Supreme court in South Carolina that is looking to the language that the general assembly has specifically selected and is not willing to move beyond that. But it is also a Supreme court that is saying, we mean this seriously. So we're not going to impose other judicially engrafted tolling principles because this isn't a judicially engrafted tolling principle in the Marshall versus Dodds and in the Wilson case. And the reason it's not, is that it came from the general assembly. So the court is dedicated to maintaining the separation of powers and to allow the general assembly to do its job. And we would submit here, your honors, that if the court were to decide that South Carolina, despite all of the case, all to the contrary, we're going to adopt a continuing breach theory that that would entirely change the law in South Carolina. And that is better left to the general assembly. And the Marshall versus Dodds court has confirmed that by again, rejecting the judicial, um, judicially engrafted tolling principles. And one issue that we'd like to address, your honor, that's come up and just to make sure that this is clear is there's been a question as to whether the continuing breach or continuing continuing violation doctrine does constitute a judicially engrafted tolling principle. And we submit that it certainly does. And fundamentally the doctrine would allow the court on its own to toll the statute of limitations by delaying the accrual of a cause of action related to the continuing violations. So it would allow a new accrual date for each violation rather than maintaining a single accrual date on the date that the early, early effect was known or had reason to be known to the plaintiff. Uh, now your honors again, Maryland law on which polymed relies recognizes this, um, that continuing harm doctrine flows from a continuing tort type claim. And so those two go hand in hand, but our Supreme court again, and Marshall rejected the continuing tort type doctrines. Anything else? So your honors, we're obviously happy to, um, ask any, answer any questions that, that you might have, but, um, just to quickly summarize, um, we would submit that, excuse me, in deciding that South Carolina would not adopt a continuing breach theory, the district. This is judge King. You said the court, did the court have discretion to decide what the law is in South Carolina? Your honor has to decide the law one way or another, has to, has to do or figure out what the law is in South Carolina. Don't you? Yes, your honor. And the, the court, um, looked to the available state law and determined that it was not clearly a matter of discretion. It's not a matter of discretion in the federal court judge to decide what the state law is. Uh, what you, what you're saying is that you think that you won. So you, you wanted to, you believe she decided it properly. Um, and you don't want a certification. Yes, your honor. We, we, we do not want it to be certified. And we do think that she considered the appropriate law that was before her and making the decision and that she had more than sufficient law. And in fact, that the Marshall decision confirms that, um, that the district court made the right call when considering whether or not South Carolina court out to continuing breach type dairy. I understand. For the question. No, sir. Thank you, Ms. Mallory. Thank you, your honor. And Mr. Brown, you preserved time. Yes, sir. Your honor. Um, and may it please the court again, I'd like to say a few things just very clearly. So there is no confusion or, uh, misstatements on my part. Uh, one of the, one of the members of the court asked, am I trying to build up to one big violation? Absolutely not. I repeat what I stated earlier and what is stated throughout my brief. I am not seeking any type of judicial tolling or judicially and grafted tolling. I am looking for the right to simply bring suit for causes of action that fall within three years of my filing date of this particular lawsuit with regard to the arguments about, well, Marshall is a statute of repose and that, you know, best, even greater rights, et cetera. It seems to me that the fact that our Supreme Court in a statute of repose case, a statute of reposes are sort of absolutes out there more so than a statute of limitation. A statute of repose is more of an absolute, more of a finish line, so to speak. This is it. And our court says in those cases, if you have claims that fall within the fresh period on the statute of repose, you're not going to face the issues we're concerned about, such as death nature. And number two, the fact that our court was willing to extend the doctrine on a statute of repose case tells me that they are indeed, in my opinion, and I know it's just my opinion and I'm on the, I lost below, so of course it'll be my opinion, that they are headed in a direction of recognizing more and more of the essentially continuous accrual doctrine, which is that there are separate causes of action. You're not trying to get the one big cause of action. And so for that reason, I think Marshall is just very, very supportive of what we're doing here. Opposing counsel, who is my colleague and my friend, said that the district court fully considered the case law that was out there. I would ask this court to look at the essentially five to six cases that they looked at. As we know, Ortho McNeil was just cast aside based upon the UTPA arguments. But if you look at Ortho McNeil, our Supreme Court goes and looks at cases from all over the country, including some cases from South Carolina that have to do with issues outside of the UTPA, such as whether someone can for bringing tax credit suits and whether or not they accrue or whether you lose those causes of action at a particular time. And in that particular case, they said, no, we're going to take this particular date you filed suit, go back three years, you can sue for your tax credits under a probate matter. So there is a wind blowing, in my opinion, for recognition of this particular doctrine. I would, again, also ask you to look at the Viera case that the district court cited. It was cited for, I think, footnote seven, where they talk about the judge said he was looking for cases about a continuing wrong theory and he couldn't find any. It's a complicated case. The fact pattern will drive, I think, even the most experienced appellate court judge up the wall a little bit. But when you get into it deeply, you discover it's an interesting case because Judge David Norton, very well district court judge here in Charleston, had a case before him and he did exactly, although it's not in a contract action, but with regard to a fraud claim and with regard to a malpractice claim related to legal malpractice, he said, here's what I'm going to do. Take the date of file and go back three years. You can sue for those things. Anything past that, I'm not going to let you get there. And that is in the Viera case, which the district court cited as supporting the proposition that South Carolina would not adopt this particular case. The other cases, all are tolling cases. Mayor versus T-Tex, which had to do with the pension plan, tolling. Anonymous taxpayer really wasn't even tolling. That was an impairment of contract case. So they said there was only one harm. Dillon County, again, a tolling issue. And then we had the companion property case, which Judge Curry looked at on a motion to dismiss. And this same continuous accrual doctrine was put before her there. And she said, well, I'm going to tell you what, I'm not going to dismiss this case based on that. In other words, she saw it as something that had potentially viability. So the cases relied upon by the district court, respectfully, do not support the conclusion that she reached on this matter. I think that you can take Marshall and you can go upside down with it. But I think one of the more interesting things, and I don't mean this in an inappropriate way, but sometimes briefs tell you more about what they address as opposed to what they don't address. And if you look at Novus's brief, Marshall is not addressed in any detail other than for footnote one, which says we oppose judicially grafted tolling. And the other thing has to do with manufacturing. The evidence is undisputed. There are affidavits in the record that no manufacturing took place whatsoever until 2014. I filed suit in 2015. How those claims are barred, to me, is not consistent with South Carolina law. I will close with this comment. My client, and everyone's client, is important to them, and I understand that. But it's a family owned business, and they have these patents and these rights that have been taken from them, just out and out taken from them, and then told, hey, because somebody breached early and breached often, and because no action was taken on it, and there are a variety of reasons why action can and wasn't taken on it, you're stuck forever. You have lost your rights. Your property has now been alienated from you. You have nothing. And when you add to that, that the district court ruled, I'm not even going to get to the declaratory judgment with regard to whether or not the contract is terminated, because there's no cause of action out there to attach this to. That's not the law. If it is, it shouldn't be. And I think the issue should be put before the court on certification. You know, you asked the question to Judge King early, what I wanted. I was a little greedy. You're right. There are no contract cases out there, and I think it's appropriate to let the court rule on that matter. Thank you, Mr. Brown. Thank the court so much. Thank you. Thank you. And thank you, Ms. Mallory. We'll take your case under advisement, and the court will take a brief break before hearing the next case. Thank you, Your Honor. Thank you. The court will take a brief break before hearing the next case.
judges: Robert B. King, Barbara Milano Keenan, Pamela A. Harris